This invasion-of-privacy case arises from an investigation of complaints made about a game warden employed by the Alabama Department of Conservation and Natural Resources (the "Department"), concerning that game warden's alleged threat to kill Roy Johnston. The plaintiff, Johnston, alleges that the defendants — certain employees of Department and a probate judge — turned the game warden investigation, which consisted primarily of interviews of people who knew of the animosity between Johnston and the game warden, into an investigation of Johnston alone, and that this invaded Johnston's privacy. The trial court entered a summary judgment in favor of all the defendants. We affirm.
On review of a summary judgment, we must view the evidence in the light most favorable to the nonmovant, here Johnston; viewed in that light, the evidence indicates the following: Johnston had handled certain real estate matters for Hall Thompson in Coosa County. Johnston complained to Thompson that Earl Brown, the game warden in Coosa County, had, among other things, made a threat against Johnston's life. Because of the seriousness of the allegation, Thompson, who knew the Commissioner of the Department, James Martin, suggested that Martin look into the matter.
Martin informed Captain William Fuller of the Law Enforcement Section of the Department that he should talk to Johnston and proceed with an investigation of Brown. Johnston told Fuller that an unnamed third party had told him that Brown had made a statement regarding the purchase of plastic-coated bullets for the purpose of shooting Johnston. Johnston did not tell Fuller who had informed him of the threat. However, he did tell Fuller that he should talk to the people who worked with Brown. After speaking with Johnston, Fuller contacted Brown. Brown denied ever saying that he was going to kill Johnston.
Pursuant to Johnston's suggestion, Fuller continued his investigation by interviewing one of Brown's co-employees. This led to interviews of other persons whose names were given to him. Through his investigation, Fuller became aware of long-standing animosity between Brown and Johnston. Coosa County Probate Judge Jasper Fielding, on his own initiative, informed Fuller and the Commissioner of a number of incidents that called into question Johnston's character and trustworthiness, including Johnston's reputed sexual exploits and his attempt to have Brown's son charged with illegal hunting. The memoranda by which Fuller recorded the interviews indicate that Johnston was a troublemaker and that no one, other than one of Brown's co-workers, claimed to have heard Brown threaten to kill Johnston.
At some point during the investigation, Martin provided Thompson with the investigation file and asked him to keep the contents confidential. While Thompson had the file, Johnston reviewed it. Johnston then filed this tort action against Martin, Fuller, and Judge Fielding, alleging invasion of privacy.
Alabama has long recognized the tort of invasion of privacy.Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948). It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321
(1961). Johnston alleges that the defendants invaded his privacy by committing the first two wrongs: (1) that the defendants intruded into his physical solitude or seclusion; and (2) that the defendants gave publicity to private information about him.
 I. INTRUSION INTO PHYSICAL SOLITUDE OR SECLUSION
Johnston alleges that Martin and Fuller's investigation of Brown turned into an investigation of Johnston himself. Further, Johnston alleges that Martin and Fuller attempted to use the information uncovered *Page 702 
in the investigation to coerce Johnston into dropping his complaint against Brown. Johnston admits, however, that the investigation consisted solely of interviewing people about their knowledge of Johnston and of Brown.
In Phillips v. Smalley Maintenance Services, Inc.,435 So.2d 705 (Ala. 1983), this Court adopted the Restatement (Second) ofTorts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
 "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
Restatement (Second) of Torts § 652B (1977). Comment c to § 652B states in part: "The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts § 652B cmt. b; see Vernars v. Young, 539 F.2d 966 (3d Cir. 1976) (holding that invasion of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiff's consent); see generally, W. Page Keeton, et al., Prosser and Keeton onthe Law of Torts, § 117, at 854-55 (5th ed. 1984); 62 Am.Jur.2dPrivacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. See Hogin v. Cottingham,533 So.2d 525 (Ala. 1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private).
Johnston did not allege that the defendants entered his home, searched through his private papers, wiretapped his telephone, or eavesdropped on his conversations. Johnston did not allege that the defendants obtained private records concerning his affairs. Johnston failed to present any evidence that Fuller's conduct in gathering the information was abrupt, offensive, and objectionable. Johnston admits that the defendants obtained their knowledge of him through firsthand conversations with him and through voluntary interviews with members of the community in which Johnston lived.
In Nader v. General Motors Corp., 25 N.Y.2d 560,255 N.E.2d 765, 307 N.Y.S.2d 647 (1970), the Court of Appeals of New York dealt with a similar wrongful-intrusion claim arising in part from the defendant's voluntary interviews with acquaintances of the plaintiff. The court stated:
 "[W]e cannot find any basis for a claim of invasion of privacy [based on wrongful intrusion] . . . in the allegations that the [defendant], through its agents or employees, interviewed many persons who knew the plaintiff, asking questions about him and casting aspersions on his character. Although those inquiries may have uncovered information of a personal nature, it is difficult to see how they may be said to have invaded the plaintiff's privacy. Information about the plaintiff which was already known to others could hardly be regarded as private to the plaintiff. Presumably, the plaintiff had previously revealed the information to such other persons, and he would necessarily assume the risk that a friend or acquaintance in whom he had confided might breach the confidence. If, as alleged, the questions tended to disparage the plaintiff's character, his remedy would seem to be by way of an action for defamation, not for breach of his light to privacy."
Nader, 25 N.Y.2d at 568-69, 255 N.E.2d at 770,307 N.Y.S.2d at 654. Accord Nipper v. Variety Wholesalers, Inc., 638 So.2d 778
(Ala. 1994) (interviewing co-employees about their general knowledge of the plaintiff was not actionable).
Likewise, Johnston's allegations concern only voluntary interviews in which the defendants learned information already known to others. This information is not protected by *Page 703 
the limited scope of the wrongful-intrusion branch of the invasion-of-privacy tort, and we reject Johnston's invitation to create a broad privacy action, with no metes and bounds, that would extend beyond his dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers.[1]
 II. GIVING PUBLICITY TO PRIVATE INFORMATION
Johnston also asserts that the defendants invaded his privacy by giving publicity to private information concerning Johnston when Martin delivered to Thompson the file containing the interview memoranda. Johnston admits, however, that the information in the file was not shown to the public at large or to a large number of people.
The Restatement provides:
 "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
 "(a) would be highly offensive to a reasonable person, and
 "(b) is not of legitimate concern to the public."
Restatement (Second) of Torts § 652D (emphasis added). The comments to § 652D describe the key element of this tort, "publicity," as follows:
 " 'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used . . . in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public.
 "Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."
Restatement (Second) of Torts § 652D cmt. a (1977) (emphasis added). Accord Nobles v. Cartwright, 659 N.E.2d 1064, 1074
(Ind.Ct.App. 1995).
Martin did not broadcast over the radio the information obtained about Johnston, he did not print it in a newspaper, and he did not tell it to a large number of people. He merely turned over the file to the person who had prompted the investigation and that person then showed the file to Johnston.[2] This was not an invasion of privacy through publicity.[3]
Based on the foregoing, we hold that the trial court correctly entered the summary judgment in favor of the defendants.[4]
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
SHORES, J., concurs in the result.
[1] See generally Restatement (Second) of Torts § 652A cmt. c (1977) (noting that "some courts, and in particular the Supreme Court of the United States, have spoken in very broad general terms of a somewhat undefined 'right of privacy' as a ground for various constitutional decisions involving indeterminate civil and personal rights").
[2] Moreover, the information publicized must be of a private nature to warrant relief. Abernathy v. Thornton, 263 Ala. 496,498, 83 So.2d 235, 237 (1955) (stating that there is "no privacy in that which is already public"). In this case, the information was obtained from the general knowledge of community members.
[3] Because we hold there is not a cognizable invasion of privacy in this case, we do not address the assertions of sovereign and qualified immunity by certain of the defendants.
[4] Johnston's claim that the defendants conspired to invade his privacy also fails because the alleged object of the conspiracy was not tortious in and of itself. See Keith v. Witt AutoSales, Inc., 578 So.2d 1269, 1274 (Ala. 1991) (stating that a civil conspiracy must have a tortious object.). *Page 704