This is an invasion-of-privacy case arising from an alleged incident of sexual harassment in the workplace. The plaintiff, Teresa Watson, was employed by a temporary agency that placed her in a job with The Birmingham News, Inc. ("The News"), a newspaper publisher. She sued The News, alleging that it, through a person she claimed was its agent and whom she identified as "Derrick," had invaded her privacy by giving publicity to an incident between her and William Lowery, a security guard stationed at The News's place of business. After a jury trial, the *Page 816 
court entered a judgment for the plaintiff on certain claims. The Court of Civil Appeals affirmed that judgment without an opinion, but with a written dissent. Birmingham News, Inc. v.Watson, 778 So.2d 813 (Ala.Civ.App. 1999). We granted certiorari review. We reverse and remand with instructions.
Watson, an employee of Manpower Temporary Employment Services ("Manpower"), was assigned to work for The News. She worked at night in the mail room, inserting supplements into newspapers.[1] Lowery, an 80-year-old security guard, was employed by Pinkerton Security and Investigation Services, Inc. ("Pinkerton"). He also was stationed at The News. Lowery had worked at The News as a security guard for approximately 20 years. Watson and Lowery often worked during the same shift.
Watson claimed that on the night of Thursday, September 15, 1994, Lowery hugged and kissed her as they rode up in the elevator at The News. Watson testified at trial that when she arrived at work that night Lowery told her he was going to "bachelor it up this weekend." Later that night, she went outside to move her car closer to the building where she was working. She testified that as she returned to the building she and Lowery engaged in conversation, mainly about her plans for her upcoming 21st birthday, and that he told her that his wife was out of town for the weekend. Watson stated that Lowery rode in the elevator with her as she returned to the mail room. She stated that during the elevator ride Lowery put his arms around her, kissed her on the cheek, and offered her $25. Watson testified that she pushed Lowery away and left the elevator when the door opened.[2]
Watson immediately informed Tommy Bowman, her direct supervisor, about the incident. Bowman then notified Steve Patton, the mail room supervisor, about Watson's complaint. Bowman instructed Watson to keep the matter confidential. The following day, Watson met with Gail Moore, the director of The News's Human Resources Department;[3] Jim Payton, a manager with The News; and a representative from Manpower, and she gave them another statement about the incident. That same day — despite Bowman's instructions to the contrary — Watson told her mother, who worked in The News's mail room, and Joyce Hughie, a coworker at The News, about the incident. Watson claims that after she returned to work on Monday night, another supervisor, "Derrick,"[4] said to her, "I don't want to get too close because I don't want a sexual-harassment suit against me." (C. 307.) Watson's mother testified at trial that she overheard Derrick telling "another lady" that he did not want to work near Watson because "he didn't want to lose his job." (C. 379.)
Ann Brown, The News's chief of security, and Laura Dunson, who by 1997 had become the director of Human Resources (see note 3), testified at trial that The News's policy regarding contract employees was to remove them from their positions when an allegation of wrongdoing was made against them. After Watson made her complaint, Lowery was immediately removed from his work with The *Page 817 
News. Jerry Lightfoot, the district manager for Pinkerton, testified that Pinkerton's policy was to suspend the employee until an investigation was completed. Pinkerton reassigned Lowery to another job.
Watson sued Pinkerton, The News, and Lowery, seeking damages based on claims alleging assault and battery, false imprisonment, invasion of privacy, and the tort of outrage. She made those claims against all three defendants. In addition, Watson alleged that Pinkerton and The News were liable for negligent hiring and supervision.[5] The trial court entered a judgment as a matter of law in favor of Pinkerton, The News, and Lowery on all claims except the claims against Lowery alleging assault and battery and false imprisonment and the claim against The News alleging invasion of privacy.[6] Those claims went to the jury. The jury returned a verdict against Lowery, awarding Watson $3. The jury also returned a verdict against The News, awarding Watson $6,000 ($1,500 in compensatory damages and $4,500 in punitive damages).
The News filed a motion asking the court to "reconsider" its order denying the News's motion for directed verdict or, in the alternative, asking for a judgment notwithstanding the verdict.[7] The trial court denied the motion. The News appealed. The Court of Civil Appeals affirmed, without an opinion. In its memorandum of affirmance, the Court of Civil Appeals cited Johnston v. Fuller, 706 So.2d 700 (Ala. 1997);Nipper v. Variety Wholesalers, Inc., 638 So.2d 778 (Ala. 1994); and Old Southern Life Insurance Co. v. McConnell, 52 Ala. App. 589,296 So.2d 183 (Ala.Civ.App. 1974). Judge Crawley, dissenting, stated that, based on Johnston, he concluded that Watson had not proved the elements of the tort of invasion of privacy through "giving publicity to private information." (See the quotation from Johnston, infra, identifying the four kinds of wrongs that will support an invasion-of-privacy claim.)
We agree with Judge Crawley. Watson failed to present substantial evidence in support of her invasion-of-privacy claim.Johnston, 706 So.2d 700.
 "[The applicable standard of review] is whether the nonmoving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039 (Ala. 1990); see Ala. Code 1975, § 12-21-12(a). Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). The ultimate question is whether the nonmovant has presented substantial evidence to allow submission of the case or issue to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992)."
Smith v. Vice, 641 So.2d 785, 786 (Ala. 1994).
Although the motion for a judgment as a matter of law was based partly on on The News's argument that it was not liable for the actions of Derrick because, The News contended, he was not acting within the scope of his employment when he spoke to Watson and because, The News further contended, it did not *Page 818 
ratify Derrick's behavior, we focus on The News's argument that Watson failed to prove a prima facie case of invasion of privacy. In Johnston, this Court presented the various invasion-of-privacy claims available under Alabama law:
 "Alabama has long recognized the tort of invasion of privacy. Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948). It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use."
706 So.2d at 701. Watson's complaint alleged that The News had invaded her privacy by giving publicity to private information about her and that The News's giving that publicity had violated principles of ordinary decency.[8]
In regard to a claimed invasion of privacy based on a defendant's giving publicity to private information, this Court has adopted the language and reasoning of Restatement (Second) ofTorts § 652D (1977). Johnston, 706 So.2d at 703. Section 652D states:
 "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
 "(a) would be highly offensive to a reasonable person, and
"(b) is not of legitimate concern to the public."
Thus, in order to present a prima facie case of this particular kind of invasion of privacy, the plaintiff must present substantial evidence tending to show the existence of each of the elements set out in § 652D.
The first — and key — element in proving this invasion-of-privacy tort is "publicity." Johnston, 706 So.2d at 703. Comment a to § 652D defines "publicity": making a "matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." See Johnston, 706 So.2d at 703. "Publication," on the other hand, "is a word of art, which includes any communication by the defendant to a third person." Restatement (Second) of Torts § 652D cmt. a; Johnston, 706 So.2d at 703. If a person has given "publicity" to a matter, then the communication is sure to reach the public. Restatement (Second) of Torts § 652D cmt. a; Johnston, 706 So.2d at 703. Comment a adds:
 "Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term. . . ."
(Emphasis added.)
Assuming that the alleged incident between Lowery and Watson concerned Watson's private life, The News did not invade Watson's privacy, because it did not give *Page 819 
publicity to the incident. The only evidence Watson presented that suggested any publicity was her testimony concerning Derrick's comment to her and her mother's testimony about the conversation she overheard between Derrick and "another lady." Watson presented testimony indicating only that The News, through Derrick, made comments to the plaintiff and to one other person. To comment to the plaintiff about the plaintiff's private life is not to give publicity to her private life; to give publicity to one's private life, a person has to make a communication to third persons. The evidence also indicated that, except for Watson's mother and Joyce Hughie, the only employees at The News who were told about the incident were those employees involved in the investigation of the incident. Moreover, in order for The News to conduct a proper investigation of Watson's complaint, the investigators had to interview Watson's supervisor and her coworkers. The News's giving Derrick and the other supervisors knowledge about the incident does not constitute giving "publicity" about the incident. Based on the record before us, we must conclude that Watson failed to present substantial evidence indicating that The News gave publicity to Watson's private life. Derrick's alleged communication about the incident was to only one person, or at most, to a small group of people.
We need not address the other elements of the tort of invasion of privacy by "giving publicity to private information" because the absence of the publicity element is dispositive. Watson did not present substantial evidence of publicity, and, thus, failed to establish the threshold element of her invasion-of-privacy claim. The trial court should have entered a judgment in favor of The News. The judgment of the Court of Civil Appeals is reversed, and the case is remanded for that court to instruct the trial court to enter a judgment in favor of The News.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Johnstone, and England, JJ., concur.
[1] Watson testified at trial that she telephoned Manpower to receive her work assignment, i.e., to learn where and when she was to work. Manpower placed her at The News for approximately a year.
[2] Lowery testified at trial that he did not kiss Watson, but that he had merely put his hands on her shoulder as he was standing in the elevator door. He also stated that he did not ride in the elevator with Watson.
[3] Gail Moore was the director of the Human Resources Department at The News in 1994 and until 1997. In 1997, Laura Dunson succeeded Moore as director.
[4] The record does not indicate Derrick's last name.
[5] Watson also filed a sexual-harassment claim with the Equal Employment Opportunity Commission ("EEOC"). At the time of trial, the EEOC had not made a finding on the claim.
[6] Although the complaint did not specify which form of invasion of privacy Watson was claiming, the trial court determined that the allegation was based on Derrick's statements or on the News's giving publicity to private information.
[7] Rule 50, Ala.R.Civ.P., has renamed the "motion for a directed verdict" as a "motion for a judgment as a matter of law," and has renamed the "motion for a judgment notwithstanding the verdict" as a "renewed motion for a judgment as a matter of law."
[8] In the brief submitted in support of its petition for the writ of certiorari, The News argued that if Watson also claimed invasion of a right to privacy by an intrusion upon seclusion, Watson failed to prove the elements of this form of privacy invasion as set forth in Johnston v. Fuller. However, we do not reach this issue. "It has long been settled that this Court can only address those issues that are set out in the petition as grounds for certiorari." Ex parte Franklin, 502 So.2d 828, 828
n. 1 (Ala. 1987) (citing Nix v. State, 271 Ala. 628, 126 So.2d 123
(1961); Liberty Nat'l Life Ins. Co. v. Stringfellow, 265 Ala. 561,92 So.2d 927 (1957)).