Barbara Rosen appeals the trial court's summary judgment for Montgomery Surgical Center, Royce Ellis, and Beverly Ellis (hereinafter referred to as "the MSC defendants"), and its grant of a motion to dismiss filed by Anesthesia Professionals, Inc. (hereinafter referred to as "API"). API has filed in this Court a motion to dismiss Rosen's appeal as it applies to it, alleging that Rosen has failed to substantially comply with the Alabama Rules of Appellate Procedure. We affirm the trial court's summary judgment and grant API's motion to dismiss this appeal as it applies to it.
On December 3, 1999, Rosen filed a complaint alleging that the MSC defendants had invaded her privacy by wrongfully disseminating medical information concerning an appendectomy performed on her at Montgomery Surgical Center. Rosen amended her complaint twice, the first time on April 10, 2000, in response to the trial court's granting Beverly Ellis's motion for a more definite statement, and the second time on May 26, 2000, to add API as a defendant. The MSC defendants each filed separate motions for a summary judgment and API filed a motion to dismiss, arguing that because Rosen had not named it as a defendant until she filed her second amended complaint, the statute of limitations had expired, barring the action as to it, and it could not properly be named as a defendant. Rosen filed a single response to the MSC defendants' respective motions for a summary judgment and a separate response to API's motion to dismiss. On December 6, 2000, the trial court entered a summary judgment for the MSC defendants and granted API's motion to dismiss, all without stating a rationale.
The record reveals the following. On December 4, 1997, as a result of chronic abdominal pain, Rosen underwent an exploratory laparoscopy[1]
at the Montgomery Surgical Center (hereinafter referred to as "MSC"). Rosen had informed some people that she was having the laparoscopy performed to determine the cause of her pain. Royce Ellis, a nurse anesthetist and an employee of API, was working at MSC that day. During the laparoscopy, it was discovered that Rosen had a severe case of appendicitis, and an emergency appendectomy was performed. It was the first time an emergency appendectomy had been performed at MSC.
Rosen alleged in her complaint that after her surgery Royce Ellis communicated to Beverly Ellis, her mother-in-law and a coworker of Rosen's at SouthTrust Bank, that Rosen had had an emergency appendectomy performed at MSC. Rosen further alleged that Beverly Ellis thereafter told at least two of her and Rosen's coworkers that Rosen's pain had been caused by appendicitis and that an emergency appendectomy had been performed at MSC. In her deposition, Rosen stated that she had confirmed to her coworkers after Beverly Ellis had told them about the surgery that she had had the emergency appendectomy.
In her deposition, Rosen stated that she was under stress in her employment at SouthTrust Bank at the time of her surgery, and she stated that she was already physically and mentally disabled and that the communication of the facts concerning her appendectomy was "a lot of gossip" that made her sicker. She further stated that she had not wanted the facts *Page 737 
concerning her appendectomy communicated, that learning that those facts had been communicated humiliated and degraded her, and that she "could not take the stress" when Beverly Ellis told her that she had heard about the appendectomy and "heard it was pretty bad."
Rosen argues on appeal (1) that the trial court erred by entering a summary judgment for the MSC defendants because, she argues, they had invaded her privacy and had violated a duty they owed her not to disclose her medical information, and (2) that the trial court erred in granting API's motion to dismiss because, she says, API would not be prejudiced by being named as a defendant, and that it knew, or should have known, that but for Rosen's mistake in identifying Royce Ellis's actual employer, it would have been named as an original defendant.
 I. Whether the trial court erred in granting the MSC defendants' motions for a summary judgment.
Rosen argues that the trial court erred in entering a summary judgment for the MSC defendants because, she says, there was sufficient evidence to show that they had invaded her privacy and had violated a duty they owed her not to disclose her medical information. Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
The MSC defendants each filed separate motions for a summary judgment stating, as required by Rule 56, Ala.R.Civ.P., what they alleged to be the undisputed material facts. They attached supporting affidavits and presented arguments to the effect that Rosen had failed to present a supportable invasion-of-privacy claim.
 "This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."
Carter v. Innisfree Hotel, Inc., 661 So.2d 1174, 1178 (Ala. 1995) (citingNipper v. Variety Wholesalers, Inc., 638 So.2d 778 (Ala. 1994); Phillipsv. Smalley Maint. Servs., Inc., 435 So.2d 705 (Ala. 1983); Alabama Elec.Co-operative, Inc. v. Partridge, 284 Ala. 442, 225 So.2d 848 (1969)).
In response to the MSC defendants' motions for a summary judgment, Rosen did *Page 738 
not present any evidence of disputed facts, as she could have done under Rule 56(c)(1), Ala.R.Civ.P. In regard to the dissemination of her medical information, Rosen quoted Beverly Ellis's motion for a summary judgment for the undisputed facts that "[a]fter the surgery, Royce Ellis told her mother-in-law, Beverly Ellis, that [Rosen] had the appendectomy, and that it was the first appendectomy performed at [MSC]," and that "`[s]hortly after hearing of [Rosen's] appendectomy,' from her daughter-in-law, Beverly Ellis proceeded to tell at least `two of plaintiff's co-worker's that the cause of [Rosen's] long-term and widely known abdominal problems had been identified and that she had undergone an appendectomy.'" CitingHorne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973), Rosen argued that the physician-patient relationship is confidential, and that a cause of action for invasion of privacy exists for a physician's wrongful dissemination of a patient's medical information. Rosen further citedJohnston v. Fuller, 706 So.2d 700 (Ala. 1997), for its discussion of conduct that could constitute an invasion of privacy. However, Rosen made no argument and cited no authority in response to the MSC defendants' argument that she had failed to establish an invasion-of-privacy claim because she had failed to establish the element of "publicity" concerning her medical information.
Rosen has similarly relied on Horne and Johnston in her brief on appeal. In Horne, this Court held that a physician has a general duty to not disclose a patient's medical information acquired in the course of the physician-patient relationship and stated that the "[u]nauthorized disclosure of intimate details of a patient's health may amount to unwarranted publicization of one's private affairs with which the public has no legitimate concern such as to cause outrage, mental suffering, shame or humiliation to a person of ordinary sensibilities."291 Ala. at 709, 287 So.2d at 830 (emphasis added). Rosen's argument does not support her assertion that the duty she argues the MSC defendants have violated arises out of the physician-patient relationship, such as to amount to an invasion of privacy. None of the MSC defendants are physicians; indeed, Beverly Ellis, as Rosen's coworker, has no connection to the medical profession. Therefore, the MSC defendants cannot have violated a duty arising out of a physician-patient relationship.
In Johnston, this Court stated:
 "Alabama has long recognized the tort of invasion of privacy. Smith v. Doss, 251 Ala. 250, 37 So.2d 118
(1948). It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961)."
706 So.2d at 701. Rosen does not clearly state which wrong the defendants allegedly committed. However, we infer from the record that she is proceeding under the second wrong stated in Johnston.[2] At the *Page 739 
end of her argument in her brief to this Court, Rosen concludes that "[t]he disclosure of such personal and private matters would have offended the sensibilities of any ordinary person similarly situated." Thus, she argues that the defendants' disclosure of the information — not the manner in which the information was gathered — was wrongful.
In regard to the second wrong, this Court stated in Johnston:
"The Restatement provides:
 "`One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that
 "`(a) would be highly offensive to a reasonable person, and
"`(b) is not of legitimate concern to the public.'
 "Restatement (Second) of Torts § 652D (emphasis added [in Johnston]). The comments to § 652D describe the key element of this tort, `publicity,' as follows:
 "`"Publicity," as it is used in this Section, differs from "publication," as that term is used . . . in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written, or by any other means. It is one of a communication that reaches or is sure to reach, the public.
 "`Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.'
 "Restatement (Second) of Torts § 652D cmt. a (1977) (emphasis added [in Johnston]). Accord Nobles v. Cartwright, 659 N.E.2d 1064, 1074 (Ind.Ct.App. 1995)."
706 So.2d at 703. Rosen stated in her statement of undisputed facts in her response to the MSC defendants' motions for a summary judgment that Royce Ellis told one person, Beverly Ellis, about her appendectomy and that Beverly Ellis thereafter told at least two of their coworkers. As this Court concluded in Johnston, because the defendants "did not broadcast over the radio the information obtained about [Rosen], [they] did not print it in a newspaper, and [they] did not tell it to a large number of people[,]" their actions were "not an invasion of privacy through publicity." 706 So.2d 703 (footnotes omitted). See also Ex parteBirmingham News, Inc., 778 So.2d 814 (Ala. 2000) (plaintiff failed to present a prima facie case of invasion of privacy because she failed to show a wide dissemination of the allegedly private information and therefore failed to establish the element of publicity). Similarly, we conclude that Rosen has failed to present substantial evidence creating a genuine issue of material fact concerning the element of publicity essential to her claim. Accordingly, the trial court's summary judgment for the MSC defendants is due to be affirmed. *Page 740 
 II. Whether the trial court erred by granting API's motion to dismiss.
Rosen also argues that the trial court erred in granting API's motion to dismiss because, she says, API would not be prejudiced by being named as a defendant, and that it knew, or should have known, that but for Rosen's mistake, it would have been named as a defendant. On June 21, 2001, in lieu of filing its brief in this Court, API filed a motion to dismiss Rosen's appeal as it applied to API, arguing that Rosen had failed to meet the requirements of the Alabama Rules of Appellate Procedure to properly put it on notice that it was a party to this appeal. API asserts that it was not served with the notice of appeal as required by Rule 3(d)(1), or with any of the rest of the appeal documents, as required by Rule 25(b). It relies on Penick v. CadoSystems of Central Alabama, Inc., 628 So.2d 598 (Ala. 1993), to argue that Rule 2(a)(2)(D), Ala.R.App.P., supports its contention that this appeal, as it applies to API, is due to be dismissed. In Penick, this Court stated:
 "Penick also contends that the trial judge erred in dismissing Cado Systems and Cognition [Technology Corporation] in CV-92-7219. We need not address that contention however, because as to these two defendants the appeal is due to be dismissed under Rule 2(a)(2)(D), [Ala.] R. App. P., which provides for dismissal of an appeal when the appellant has failed to comply substantially with the Alabama Rules of Appellate Procedure. It is undisputed that Cado Systems and Cognition were not served with a notice of appeal and were not served with a designation of the record as required by Rule 3(c), [Ala.] R. App. P. Although `Cado Systems' was listed on the docketing statement (see Rule 3(e), [Ala.] R. App. P.) as the party appealed against, it was not served with a copy of the statement, and the only attorney listed on the statement is counsel for G.E. Capital [a defendant in a related case] not Cado Systems. In addition, Penick's brief does not show service on counsel for these two defendants. In fact, Cado Systems and Cognition learned of the appeal only through counsel for G.E. Capital. This was despite the fact that their counsel had filed answers for both corporations.
 ". . . The motion of Cado Systems and Cognition to dismiss the appeal as to them is due to be granted."
628 So.2d at 600-01.
On July 6, 2001, Rosen filed a "Motion to Suspend the Rules and Response" to API's motion to dismiss. Her motion, in pertinent part, states:
 "The motion to dismiss asserts that the movant, ANESTHESIA PROFESSIONALS, INC., was not adequately moved [sic] in the notice of appeal, and that counsel for the movant had not been listed as one of the lawyers or firms to be served with copies of documents relating to that appeal. API does not, however, assert that it was not aware of the appeal at all necessary stages thereof. In fact, its motion clearly asserts that it was made aware of the proceedings at all stages necessary for it to take whatever action it needed to protect its interests.
 "The brief filed by the Appellant, as well as all of the briefs filed by API's agent, ROYCE ELLIS, both contain certificates showing service upon API's counsel. Therefore, in spite of the Court's holding in the case of Penick v. Cado Systems of Central Alabama, Inc., 628 So.2d 598 (Ala. 1993), API has not been prejudiced by the technical failures of the Appellant to follow the rules. Unlike Penick, API's counsel was listed *Page 741 
 on the Appellant's certificate of Service and API's agents were aware of the appeal at all times.
 "Rule 2(b) of [the] Alabama Rules of Appellate Procedure, permits the Court to suspend the rules to allow API to be identified as a party to these proceedings. The Appellant therefore moves the Court to do so at this time, and to permit API to file a brief in support of its positions."
Rosen's notice of appeal, filed March 16, 2001, listed the appellees as "Montgomery Surgical Center, Royce Ellis, Beverly Ellis, Anesthesia." The notice of appeal further stated that Rosen was appealing the summary judgment; it did not mention the judgment of dismissal entered in favor of API. Lastly, the "Certificate of Filing" section in Rosen's notice of appeal referenced an attached list of counsel representing Montgomery Surgical Center, Royce Ellis, and Beverly Ellis; it did not list API's counsel. API's counsel was not served with a letter of transmittal of the notice of appeal by the Montgomery County trial clerk, as a result of not having been listed as counsel for an appellee.
In Rosen's docketing statement, also filed on March 16, the appellees were listed as "Montgomery Surgical Center, Royce Ellis, Beverly El. [sic]" The docketing statement also stated that the appeal was from only the summary judgment. The statement of the issue in Rosen's docketing statement related only to the summary judgment, failing to list the issue regarding the motion to dismiss, which she now asserts in her brief. As was the case with the notice of appeal, API's counsel was not listed in Rosen's attachment as counsel for an appellee. Rosen's brief did name API as an appellee, and counsel for API was served with a copy of the brief.
The only deviation in the facts of this case and those of Penick is that in this case, counsel for API was served with a copy of Rosen's brief. The other factors that supported dismissal in Penick are present in this case. An additional factor supporting dismissal in this case is that Rosen did not state in her docketing statement an issue on appeal concerning API. Rosen's lack of compliance with the Alabama Rules of Appellate Procedure, in light of Penick, is of such a significant nature that it warrants dismissal.
Therefore, the summary judgment for the MSC defendants is affirmed, and the motion to dismiss this appeal as it applies to API is granted.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] "Examination of the contents of the abdominopelvic cavity with a laparoscope passed through the abdominal wall." Stedman's MedicalDictionary 966 (27th ed. 2000)
[2] Even if Rosen alleged that the MSC defendants had invaded her privacy by intruding into her physical solitude or seclusion, that contention would fail, as did the plaintiff's arguments in Johnston, because Rosen has similarly failed to allege that "the defendants entered [her] home, searched through [her] private papers, wiretapped [her] telephone, or eavesdropped on [her] conversations." Neither did she allege that the MSC defendants "obtained private records concerning [her] affairs" or that their "conduct in gathering the information was abrupt, offensive, and objectionable." 706 So.2d at 702.