THOMAS, Judge.
In May 2008, William L. Jones, Carbon Processing and Reclamation, LLC (“CPR”), and Mid-West Energy, Inc. (“Mid-West”) (CPR and Mid-West are hereinafter collectively referred to at times as “the companies”), sued Peggy Hamilton, alleging that Hamilton, a former employee of the companies and a former majority stockholder of CPR, had violated a confidentiality agreement contained in a 2007 settlement agreement between Hamilton, Jones, and the companies; that Hamilton had violated the Alabama Trade Secrets Act (“the ATSA”), codified at Ala.Code 1975,. § 8-27-1 et seq.; that Hamilton had breached a fiduciary duty to Jones and the companies; and that Hamilton had invaded the privacy of Jones and the companies. Hamilton filed a motion for a summary judgment, and, after considering a response by Jones and the companies and conducting a hearing on the motion, the trial court entered a summary judgment in favor of Hamilton. Jones and the companies appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
The factual allegations giving rise to Jones and the companies’ claims arose out of an incident on April 7, 2008, when Hamilton, at the request of Channon Edwards (“Channon”), provided a key to open a 2000 Toyota Land Cruiser vehicle owned by the companies. Channon was married to, but in the process of a divorce from, Jesse Edwards (“Edwards”), Jones’s half brother and a consultant for the companies. Edwards had been provided access to and was driving the Land Cruiser owned by the companies.
On or about March 31, 2008, Edwards drove Jones to the airport in the Land Cruiser; Jones was leaving for a two-week safari trip to Africa. Once at the airport, Jones noticed that he had left a box of documents containing financial statements and quarterly tax information from the companies, contracts between CPR and/or Mid-West and other companies, and insurance policies behind the backseat of the Land Cruiser. According to the deposition testimony of both Jones and Edwards, Jones told Edwards to be sure to lock the Land Cruiser because those documents were inside. Neither man testified that Jones instructed Edwards to return the documents to either of the companies’ offices, although Edwards returned to one of *137 the companies’ offices after leaving the airport.
In his deposition testimony, Edwards said that he did not drive the Land Cruiser “continuously” between March 31 and April 7, 2008, the date Hamilton provided the key to Channon so that Channon could enter the vehicle. Edwards said that, when he was not driving the vehicle during that week-long period, he left the Land Cruiser parked at one of the companies’ offices. He and Jones also testified that the keys to the companies’ vehicles, including the Land Cruiser, were kept at one or the other of the companies’ offices on a peg or “in the front of the office” and were not regularly kept secured.
On April 7, 2008, Edwards drove the Land Cruiser to his residence and began loading some personal and business records related to one of his former businesses into the back of the vehicle. Chan-non arrived at the residence and became upset over Edwards’s actions. Because she believed that the records that Edwards was loading into the vehicle might be relevant to their divorce, Channon demanded that Edwards not remove the records from the residence. Edwards, however, continued loading the records into the Land Cruiser over Channon’s objections. An altercation between Edwards and Channon ensued, resulting in a 911 telephone call to the police and, ultimately, Edwards’s arrest for domestic violence. Before being taken from the residence via police vehicle, Edwards insisted that the police officer lock the Land Cruiser. The police officer complied with this request and instructed Channon to stay away from the Land Cruiser, an instruction that she did not heed.
Channon consulted an attorney friend, who would not advise her, and then telephoned Hamilton. Channon hoped that Hamilton might still have a set of keys to the Land Cruiser because that vehicle had been Hamilton’s company vehicle when Hamilton was employed by the companies. Channon said that she begged Hamilton to assist her in accessing the records that Edwards had placed in the vehicle. Chan-non indicated that Hamilton seemed reluctant to provide the keys; Channon said she based her inference of Hamilton’s reluctance on the fact that Hamilton had not offered the keys on her own and the fact that there was a pause during the conversation after Channon begged Hamilton to help her get into the Land Cruiser.
According to Hamilton, on April 7, 2008, Channon called her, upset about Edwards’s placing boxes of his personal and business records in the back of the Land Cruiser. Hamilton said Channon had asked her if she had the keys to the vehicle and that she had told Channon that she would look for the keys. Hamilton said that she found several Toyota keys in a drawer and that she took all the keys to Channon to see if one might open the Land Cruiser. Hamilton testified that she had not returned the keys to the Land Cruiser after her separation from the companies because no one had ever asked her to do so. Hamilton said that one of the keys opened the Land Cruiser. According to Hamilton and Channon, Hamilton did not approach the Land Cruiser at any time and Hamilton did not assist Channon in removing any boxes from the vehicle. In fact, Hamilton and Channon both testified that Hamilton left soon after Channon was able to open the Land Cruiser.
Jones said that he was informed by Edwards that the box of company documents was taken from the vehicle on April 7, 2008, when Channon removed Edwards’s personal and business records from the vehicle. According to Jones and the companies, Hamilton’s actions in providing the keys to the Land Cruiser and assisting in *138 the removal of the confidential documents were a breach of her confidentiality agreement, which required her to keep confidential “all information identified as secret or confidential,” any information pertaining to the business operations of the companies or their financial affairs, and any other information that “from the circumstances ought in good faith and good conscience to be treated as confidential.”[1] Jones and the companies also accused Hamilton of disclosing the confidential information contained in the documents she had allegedly removed from the Land Cruiser. Jones and the companies further alleged in the complaint that Hamilton made disparaging remarks about Jones and the companies, which, they asserted, further breached the prohibition on making disparaging statements contained in the November 2007 settlement agreement.[2]
The trial court’s summary-judgment order did not state the specific basis for the judgment. However, in her motion for a summary judgment, Hamilton made several arguments regarding the claims asserted by Jones and the companies. Hamilton specifically argued that she could not have breached the confidentiality agreement because there was no disclosure, the information was not confidential, and the information had not been maintained as confidential. She further argued that Jones’s failure to take appropriate measures to ensure the confidentiality of the alleged trade secrets prevented him and the companies from succeeding on their claim under the ATSA. Thirdly, Hamilton argued that Jones and the companies could not establish substantial evidence of damages, thus preventing their establishment of the breach-of-contract claim, the breach-of-fiduciary-relationship claim, or the ATSA claim. Hamilton also challenged the lack of proof that she had any knowledge that the vehicle contained a box of allegedly confidential documents and challenged the evidence that she had made any disparaging comments about Jones and the companies on the ground that the only proof Jones and the companies had provided of such remarks was hearsay. Finally, Hamilton argued in her motion that the evidence did not establish *139 an invasion-of-privacy claim because, she asserted, there was no evidence indicating that she had intentionally intruded upon Jones and the companies’ seclusion, that Jones and the companies had experienced sufficient “suffering, shame, or humiliation” to rise to an actionable level, or that Hamilton had disseminated any information to the public.
On appeal, Jones and the companies argue that the documents in the box did, in fact, contain trade secrets under Alabama law, that they presented sufficient evidence that they suffered damage as a result of Hamilton’s actions, and that they presented substantial evidence of their invasion-of-privacy claim. After considering the legal arguments of the parties and reviewing the evidence submitted by the parties in support of and in opposition to the motion for a summary judgment, we conclude that Jones and the companies failed to present substantial evidence supporting their claims of invasion of privacy and their claim under the ATSA against Hamilton. We conclude, however, that Jones and the companies did present substantial evidence pertinent to their breach-of-contract and breach-of-fiduciary-duty claims and, therefore, that the summary judgment, insofar as it relates to those claims, should be reversed.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
On appeal, Jones and the companies argue that the documents contained in the box allegedly removed from the Land Cruiser contained trade secrets as defined by the ATSA. The ATSA defines a trade secret as information that:
“a. Is used or intended for use in a ' trade or business;
“b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
“c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
“d. Cannot be readily ascertained or derived from publicly available information;
“e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
“f. Has significant economic value.”
*140 § 8-27-2(1). As explained above, Jones testified that the box contained quarterly tax information, company financial statements, contracts between the companies and other companies, and insurance policies. According to Jones, the terms of the contracts were not known in the industry and the disclosure of those terms could be used to the detriment of the companies. Jones did not explain exactly how the quarterly tax information or the insurance policies contained confidential information. Hamilton argued to the trial court that the information contained in the documents in the box could not be considered trade secrets under the ATSA because Jones had not taken reasonable efforts to maintain the secrecy of the information, as required by § 8-27-2(l)e.
Jones and the companies were required to present substantial evidence indicating that they had taken reasonable steps to maintain the secrecy of the information contained in the documents in the box in order to prevail against Hamilton’s motion for a summary judgment on the ATSA claim. See Allied Supply Co. v. Brown, 585 So.2d 33, 36 (Ala.1991). Hamilton points out that the documents were not marked confidential, were in an unmarked cardboard box, and were left in a vehicle to which other employees of the companies had access. In Brown, the plaintiff company pursued a claim under the ATSA against former employees for allegedly misappropriating customer and vendor lists. Brown, 585 So.2d at 36. The supreme court determined that the lists did not qualify as trade secrets under the ATSA because the company had not taken reasonable steps to ensure their secrecy. Id. Specifically, the supreme court noted that at least 10 employees had access to the lists, that the lists were not marked as “confidential,” and that the lists were taken home by employees. Id.
Although the testimony in the present case does not indicate that any other employees had actually accessed the Land Cruiser or the documents contained in the missing box, the documents were left in a vehicle to which other employees potentially had access. Jones and the companies make much of the fact that Jones had instructed Edwards to lock the Land Cruiser as indicia of Jones’s desire to maintain the confidentiality of the documents. However, we are not convinced that leaving allegedly confidential and sensitive documents in a cardboard box in a company vehicle for over one week (and potentially for two weeks while Jones was out of the country) amounts to a reasonable step to ensure the secrecy of the information contained therein. The documents were left vulnerable to whomever chose to enter or to drive the vehicle, whose keys were left on a peg or in the front of one of the companies’ offices when the vehicle was not being driven by Edwards. Thus, we cannot conclude that the information contained in the documents were trade secrets under the ATSA; accordingly, we affirm the summary judgment insofar as it pertains to the ATSA claim against Hamilton.
We turn next to the breach-of-contract claim against Hamilton based on the confidentiality agreement contained in the November 2007 settlement agreement. Jones and the companies maintain that Hamilton breached the agreement either by providing Channon with access to the Land Cruiser or by personally assisting in the removal of the box of documents from the Land Cruiser. Jones and the companies also allege that Hamilton breached a portion of the November 2007 settlement agreement by making disparaging comments about Jones and the companies. Jones and the companies allege that Hamilton told Channon that Jones and the *141 companies did not properly pay taxes. Jones also indicated in his testimony that Hamilton had shared other, unspecified information with Channon, prompting Channon to sue Jones. A review of the deposition excerpts presented by the parties indicates, however, that Jones and the companies have no admissible proof that Hamilton made any disparaging comments about Jones or the companies.
In order to survive summary judgment on the breach-of-contract claim, Jones and the companies were required to prove (1) the existence of a contract, (2) their performance under that contract, (3) Hamilton’s failure to perform that contract, and (4) damages resulting from Hamilton’s failure to perform the contract. See Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995). To support the breach-of-contract claim based on allegedly disparaging statements made by Hamilton about Jones or the companies, Jones testified that, according to Edwards, Channon had said that Hamilton had told Channon that the companies and Jones had not properly paid taxes. Jones and the companies presented mere speculation that Hamilton must have shared certain other information with Channon. However, as noted above, Jones and the companies did not specify any disparaging information that Hamilton allegedly imparted other than the alleged statement regarding improper payment of taxes imputed to her by Edwards.
Regarding the specific allegation that Hamilton told Channon that Jones and the companies did not properly pay taxes, we agree with Hamilton that the evidence Jones and the companies offered is hearsay. Jones testified that Edwards told him that Channon had told Edwards that Hamilton had told Channon that Jones and the companies had not paid taxes. Although a statement made by Hamilton to a witness and repeated by that same witness would not be hearsay because of the exclusion of statements made by a party-opponent from the definition of hearsay, Rule 801(d)(2), Ala. R. Evid., Jones’s testimony was based on a statement made to him by Edwards that Channon had reported that Hamilton had made the alleged statement regarding taxes to Channon. Edwards’s statement is an out-of-court statement offered to prove the truth of matter asserted — that Hamilton made a statement regarding taxes to Channon — and, thus, it is hearsay. Rule 801(c), Ala. R. Evid. In fact, Edwards’s statement is based on an out-of-court statement by Channon, and, thus, Edwards’s statement is double hearsay. Thus, we cannot conclude that Jones and the companies presented substantial evidence indicating that Hamilton breached the confidentiality agreement by making disparaging statements about Jones or the companies.
As noted above, Jones and the companies also base their breach-of-contract claim against Hamilton on her having provided the key to the Land Cruiser to Channon and on her allegedly having assisted Channon in removing the box of documents from the vehicle. In her motion for a summary judgment, Hamilton based a large portion of her argument that she was entitled to a summary judgment on the breach-of-contract claim on the assertion that Jones and the companies had not provided substantial evidence of damages suffered as a result of the breach. Hamilton also argued in her summary-judgment motion that the information contained in the box of documents was not confidential because it was not treated as confidential information. However, Hamilton’s arguments are flawed and do not support the summary judgment in her favor.
*142 First, the confidentiality agreement required that Hamilton keep confidential not only all information identified as confidential, but also all information related to the business, operations, or financial affairs of the companies and any other matters that, in good conscience, should be kept confidential. Thus, it matters little whether the information was identified as confidential or treated as confidential, provided it fits under one of the other categories of information described in the confidentiality agreement. Although we agree with Hamilton that the information contained in the documents in the box did not qualify as trade secrets under the ATSA, the confidentiality agreement, by its terms, does not limit Hamilton’s duty of confidentiality to only that information that could be considered a trade secret under Alabama law. The financial records and contracts appear to fit within the definition of information relatéd to the business, operations, or financial affairs of the companies; as such, that information was covered by the confi-déntiality agreement, and Hamilton was required not to “disclose[] to others or make available, directly or indirectly,” that information.
Hamilton’s argument that Jones and the companies’ failure to articulate actual damages to support their breach-of-contract claim is fatal to that claim is also insufficient to. warrant a summary judgment in her favor. Alabama law provides for nominal damages if a breach of contract is proven, even if a breach-of-contract plaintiff cannot prove actual damages. Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 128 (Ala.1989) (“It is well settled, however, that once a breach of contract has been established, as it was in this case, the nonbreaching party is entitled to nominal damages even if there was a failure of proof regarding actual damages.”); see also James S. Kemper & Co. Southeast, Inc. v. Cox & Assocs., Inc., 434 So.2d 1380, 1385 (Ala.1983) (“When the evidence establishes a breach, even if only technical, there is nothing discretionary about the award of nominal damages.”). Thus, even if Jones and the companies failed to present substantial evidence of actual damages, Hamilton would not be entitled to a summary judgment on the breach-of-contract claim on that ground.
Hamilton argued in the trial court that by failing to give a “ballpark judgment” of the monetary amount of damages they intended to claim, Jones and the companies failed to meet their burden to provide substantial evidence of damages. We disagree. Jones testified that, as a result of Hamilton’s breach, he has had to have financial records reconstructed and that his outside accountant, Russell Stone, would be billing him for the time and work it took to do so. Jones stated that they had not finished reconstructing all the documents and that Stone had not provided him with an amount. This evidence is sufficient evidence to establish the existence of damages as a result of the alleged breach of the confidentiality agreement. We therefore reverse the summary judgment as it pertains to the breach-of-contract claim insofar as it was based upon Hamilton’s breach of the confidentiality agreement by disclosing or making available the companies’ business, operations, or financial information.
Hamilton also premised her summary-judgment motion regarding the breach-of-fiduciary-duty claim largely on the failure of Jones and the companies to produce evidence of damages resulting from her alleged breach of duty.[3] “A *143 claim alleging breach of fiduciary duty sounds in tort, Brooks v. Hill, 717 So.2d 759, 764 (Ala.1998), and ‘[a] necessary element to be proven in an action alleging breach of duty is damages.’ Williams v. Citizens Nat’l Bank of Shawmut, 570 So.2d 635, 638 (Ala.1990).” Hensley v. Poole, 910 So.2d 96, 106 (Ala.2005). The same evidence of damages discussed above also supports Jones and the companies’ breach-of-fiduciary-duty claim. Thus, Jones and the companies presented sufficient evidence of damages to overcome Hamilton’s motion for a summary judgment insofar as she argued that Jones and the companies could not prove the essential element of damages to establish their breach-of-fiduciary-duty claim. We therefore reverse the summary judgment insofar as it pertains to the breach-of-fidueia-ry-duty claim.
Finally, we consider whether the trial court properly entered a summary judgment on the invasion-of-privacy claim asserted against Hamilton by Jones and the companies. The parties agree that the invasion-of-privacy claim is premised both on the intrusion-upon-seclusion and the giving-publieity-to-private-infor-mation wrongs of the tort of invasion of privacy.[4] In her motion for a summary judgment, Hamilton argued that Jones and the companies had not presented evidence indicating that she had intentionally intruded on their seclusion. See S.B. v. Saint James School, 959 So.2d 72, 90 (Ala.2006). She further argued that, even assuming Hamilton did communicate the allegedly confidential information concerning Jones or the companies to Channon, Jones and the companies could not maintain the cause of action because “communicating [information] to only one person or a small group of persons” is not an invasion of privacy. See Johnston v. Fuller, 706 So.2d 700, 703 (Ala.1997).
We agree that Jones and the companies have presented no evidence warranting a determination that Hamilton intentionally intruded into their seclusion. As explained by our supreme court in Johnston:
“Comment c to § 652B [of the Restatement (Second) of Torts ] states in part: ‘The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.’ The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiffs private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiffs private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts § 652B cmt. b; see Vernars v. Young, 539 F.2d 966 (3d Cir.1976) (holding that invasion *144 of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiffs consent); see generally, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 117, at 854-55 (5th ed.1984); 62 Am.Jur.2d Privacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. See Hogin v. Cottingham, 533 So.2d 525 (Ala.1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private).”
Johnston, 706 So.2d at 702.
In his deposition, Jones admitted that he “didn’t know” how Hamilton could have known that the box of documents was in the Land Cruiser; thus, Jones has admitted having no evidence indicating that Hamilton would have known to look in the Land Cruiser for the box of documents. His conclusory testimony that the fact that Hamilton admitted that she gave Channon the key to the Land Cruiser was “concrete proof ... indicating] that she had something to do with [the] missing records” is not evidence that Hamilton intentionally provided entry into the Land Cruiser to locate the box of documents. Furthermore, Jones and the companies did not present evidence indicating that Hamilton ever took possession of the box containing the documents. All the testimony presented in support of and in opposition to the motion for a summary judgment indicated that Hamilton never approached the Land Cruiser and that she left without assisting Channon in removing any boxes from the vehicle. None of the evidence amounts to substantial evidence indicating that Hamilton intentionally intruded into Jones or the companies’ seclusion to pry into their confidential affairs. See Johnston, 706 So.2d at 702 (affirming a summary judgment in favor of the defendants on an invasion-of-privacy/wrongful-intrusion claim because the plaintiff failed to show, among other things, that the defendants entered his home and searched through his private papers). Thus, we affirm the summary judgment entered on the invasion-of-privacy claim insofar as that claim relates to the allegation that Hamilton wrongfully intruded into Jones’s and the companies’ seclusion.
Likewise, the trial court properly entered the summary judgment on the publicity prong of the invasion-of-privacy claim asserted by Jones and the companies. As noted above, even assuming Hamilton acquired possession or knowledge of the allegedly confidential information contained in the box of documents, any dissemination of that information to one or a few persons would not amount to an invasion of the right to privacy. Johnston, 706 So.2d at 703.
“The comments to § 652D describe the key element of this tort, ‘publicity,’ as follows:
“ ‘ “Publicity,” as it is used in this Section, differs from “publication,” as that term is used ... in connection with liability for defamation. “Publication,” in that sense, is a word of art, which includes any communication by the defendant to a third person. “Publicity,” on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public.
*145 “ ‘Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff’s private life to a single person or even to a small group of persons’
“Restatement (Second) of Torts § 652D cmt. a (1977) (emphasis added).”
Johnston, 706 So.2d at 703. As noted above, Jones either relied on double hearsay or made speculative comments regarding Hamilton’s alleged disparaging remarks, like stating that he had “gleaned” that Hamilton had given Channon information or that he had heard that Hamilton had discussed certain information with Channon. Even if it were not either speculation or hearsay, Jones’s testimony regarding Hamilton’s supposed relating of confidential information would indicate that Hamilton communicated information to Channon alone. Thus, Hamilton’s alleged actions could not form the basis of recovery under the publicity prong of the invasion of the right to privacy and the trial court’s summary judgment on that portion of the invasion-of-privacy claim is affirmed.
As explained above, we reverse the summary judgment entered in favor of Hamilton on Jones and the companies’ claims of breach of contract and breach of fiduciary duty. We affirm the summary judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The entire text of the confidentiality agreement is as follows:
"Hamilton and Jones agree that the terms and conditions set forth in this agreement may be disclosed to their respective attorneys and accountants but otherwise shall be held strictly confidential. Hamilton and Jones further agree that each will keep in strictest confidence at all times, (i) all information identified as secret or confidential,
(ii) related in any manner to the business, operations or financial affairs of either CPR or Mid-West or any of them individually, or
(iii) which from the circumstances ought in good faith and in good conscience to be treated as confidential, related to the business relationship that existed between Hamilton and Jones and shall not disclosed to others or make available, directly or indirectly, such secret or confidential information in any fashion, provided, however, each party may disclose such information to their respective attorneys and, upon inquiry, to any governmental agencies.”

. The text of the provision prohibiting disparaging statements reads as follows:
"Because the purpose of this Agreement is to settle amicably any and all disputes or claims among those parties, neither Hamilton nor Jones shall, after execution of this agreement, directly or indirectly, make or cause to be made any statements to any third parties criticizing or disparaging the other party, or commenting on the character, personal or business reputation of the other party or any of the entities in which they hold or have held an ownership interest. Each of Hamilton and Jones further agree not to engage in any act or omission that would be detrimental, financially or otherwise, to the other or any business in which either party has held or holds an equity interest, or that may subject the other [to] public disrespect, scandal or ridicule.”

. Hamilton also argued in her motion that, in presenting evidence in support of their breach-of-fiduciary-duty claim, Jones and the companies had "ignored the element of *143 knowledge necessary for a cause of action for a violation of the [ATSA].” Because the two claims are distinctly different, we see no need to address whether Hamilton lacked the requisite knowledge to impose liability under the ATSA in the context of the breach-of-fiduciary-duty claim.

. As our supreme court explained in Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705, 708 (Ala.1983):
"It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (Ala.1961), citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1955).”
(Footnote omitted.)