[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12876
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cv-01449-WMA

ARETHA M. EDWARDS,

Plaintiff-Appellant,

versus

NATIONAL VISION INC.,

Defendant-Appellee,

AMERICA'S BEST CONTACTS & EYEGLASSES,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 12, 2014)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

I.

This is an employment discrimination case brought by Aretha Edwards against her former employer, National Vision, Inc. ("NVI").[1]   Her complaint, framed in seven counts, alleged the following.  Count One, entitled "Race Discrimination and Harassment Claims" and brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20003-3(a), and 42 U.S.C. § 1981, alleged that Edwards, who is black, was qualified to perform her job duties and for the promotion she sought, the Assistant Contact Lens Manager ("Assistant Manager") position, and that NVI denied the promotion, filling it with a less-qualified white person.  Count One also alleged subjected her to a hostile work environment due to her race.

Count Two, entitled "Retaliation," brought under § 1981 and Title VII, alleged that NVI retaliated against her after she complained about promotion and hiring practices based on race and age.

Count Three, entitled "Negligent and Wanton, Hiring, Training, Supervision, and Retention" and brought under Alabama law, alleged that NVI knew about

---

[1] NVI, a national retail firm, acquired America's Best Contacts & Eyeglasses.  We refer to the two firms as NVI.

Edwards's complaints and failed to discipline the employees who were discriminating and retaliating against her.

Count Four, entitled "Intentional Infliction of Emotional Distress" and brought under Alabama law, alleged that the NVI employees discriminatory and retaliatory conduct caused her emotional distress.

Count Five, entitled "Family and Medical Leave Act" ("FMLA"), 29 U.S.C. § 2615(a), alleged that NIV opposed her leave under the Act and then retaliated against her for taking leave.

Count Six, entitled "Invasion of Privacy and brought under Alabama law, alleged that NIV's employees' conduct invaded her privacy, and

Count Seven, entitled "Constructive Discharge" and brought under Alabama law, alleged that NIV's employees' conduct effectively caused the termination of her employment.

## II.

Following extensive discovery, NIV filed a motion for summary judgment on all claims, and the District Court granted the motion. Edwards appeals, arguing that the summary judgment should be vacated and the case remanded for trial because the district court (1) abused its discretion by concluding that statements made to her by her supervisor, Louise Moore, concerning a racial motive for promoting Victoria Alberson rather than her to the position of Assistant Manager,

3

were inadmissible hearsay; (2) abused its discretion by striking Victoria Alberson's declaration; (3) erred by relying on NVI's argument that she could not establish that Alberson was equally or less-qualified for the Assistant Manager position, despite the fact that the District Manager indicated that she was not promoted because she did not apply for a promotion; (4) erred by granting summary judgment in favor of NVI on her Title VII race discrimination claims for NVI's failure to promote her in December 2007 and February 2008 because she failed to timely file with the Equal Employment Opportunity Commission ("EEOC"); (5) erred in granting summary judgment in favor of NVI on her race discrimination claims, pursuant to U.S.C. § 1981, because she failed to file within the statute of limitations; (6) erred by granting summary judgment in favor of NVI on her FMLA claim; (7) erred by granting summary judgment in favor of NVI on her retaliation claim; (8) erred by granting summary judgment in favor of NVI on her racial harassment claim; (9) erred by granting summary judgment in favor of NVI on her state law claims of negligent hiring, retention, training, and supervision, and claim of invasion of privacy.

We review a district court's grant of summary judgment *de novo*, viewing all evidence and factual inferences in favor of the non-moving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). We can affirm a district court's decision on any adequate ground. *Wright v. AmSouth Bancorporation*, 320 F.3d

4

1198, 1203 n.3 (11th Cir. 2003); *see also Cuddeback v. Florida Bd. Of Educ.*, 381 F.3d 1230, 1235-36 (11th Cir. 2004) (holding that we may affirm a district court's grant of summary judgment based on a failure to establish pretext even where the district court only addressed the issue of establishment of a *prima facie* case).

Summary judgment is appropriate when the moving party meets its burden of production, demonstrating that no genuine issue of any material fact exists, and the non-moving party fails to present evidence showing that a reasonable jury could find in its favor. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). With these standards in hand, we address the arguments listed above by number.

(1) Statements made by Moore to Edwards concerning a racial motive for failing to promote Edwards

A district court's evidentiary rulings are reviewed for an abuse of discretion. *Proctor v. Fluor Enter., Inc.*, 494 F.3d 1337, 1349 n.7 (11th Cir. 2007). As a general matter, the court should not consider inadmissible hearsay in passing on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322-25 (11th Cir. 1999). The court may consider a hearsay statement, though, if the statement could be "reduced to admissible evidence at trial." *Id.* at 1323. Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing,

5

offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R. Evid. 805.

Under Rule 801(d)(2), admissions of a party opponent are admissible. Fed. R. Evid. 801(d)(2). "[A] statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship [ ] is deemed an admission by a party opponent." *Zaben v. Air Products & Chemical, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997); *see also* Fed. R. Evid. 801(d)(2)(D). "[S]tatements made by a supervisory official who plays some role in the decision making process are generally admissible." *Zaben*, 129 F.3d at 1456.

The statements in question here constitute hearsay within hearsay. Edwards offered statements in her deposition and declaration that were made by Moore. Moore's statements referred to unidentified third parties who said they wanted to hire someone white for the Assistant Manager position. These third-party statements were not admissible under any exception to the hearsay rule. Because Moore's statement (based on what the third parties said) and the third parties' statement did not fall within an exception to the hearsay rules, the statements were

6

not admissible, and the court did not abuse its discretion in striking the statements as inadmissible hearsay. Accordingly, we affirm with respect to this issue.

(2) Striking Victoria Alberson's declaration

We review a district court's ruling regarding discovery for abuse of discretion. *Benson v. Tocco*, 113 F.3d 1203, 1208 (11th Cir. 1997). Under Federal Rule of Civil Procedure 26(e), a party who has made a disclosure under Rule 26(a) or who has responded to a request for admission must supplement or correct its disclosure in a timely manner if the party learns that in some material respect the disclosure is incomplete, and if the additional information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Edwards concedes that she did not produce Alberson's declaration and does not offer any explanation for her failure to produce it. The declaration was not harmless because it contained significant information that was relevant to whether NVI discriminated and retaliated against Edwards. We find no abuse of discretion in the court's decision to strike the declaration and therefore affirm with respect to this issue.

(3) Reliance on NVI's Argument that Edwards cannot establish that Alberson was equally or less-qualified for the Assistant Manager position

Title VII prohibits an employer from discriminating against an individual on the basis of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  Where a Title VII claim relies on circumstantial evidence, courts often apply the framework set forth in *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  *See Brooks*, 446 F.3d at 1162.  In the failure-to-promote context, the *prima facie* case consists of showing the following elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that another equally or less- qualified employee outside her class was promoted.  *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).

Edwards misunderstands the nature of NVI's arguments on appeal and the requirements for establishing a *prima facie* case under *McDonnell Douglas*.  She bore the initial burden of establishing a *prima facie* case.  *Brown*, 597 F.3d at 1174. In the failure-to-promote context, she had to establish four elements, including that another equally or less-qualified employee outside her class was promoted.  *Id.* She failed to establish that NVI promoted an equally or less-qualified employee

8

outside of her class, and therefore, did not meet her burden. *See Brown*, 597 F.3d at 1174. The fact that NVI had a legitimate, nondiscriminatory reason for not promoting Edwards, does not preclude NVI from arguing on appeal that she failed to establish a *prima facie* case. Thus, to the extent the district court based its summary judgment decision on her failure to show that Alberson was equally or less qualified, it did not err in doing so. Accordingly, we affirm with respect to this issue.

(4) Failure to timely file with the EEOC

Title VII prohibits an employer from discriminating against an individual on the basis of that individual's race. 42 U.S.C. § 2000e-2(a)(1). In order to file a claim for discrimination under Title VII, the plaintiff must first exhaust her administrative remedies, beginning with the filing of a charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). For a charge to be timely in a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1), *see Wilkerson*, 270 F.3d at 1317; *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1214 n.2, 1220 (11th Cir. 2001).

With respect to Edwards's claim of NVI's failure to promote her in December 2007 and February 2008, the district court properly concluded that these

9

claims were time-barred because they occurred more than 180 days before she filed her EEOC charge in November 2008.  Accordingly, we affirm with respect to this issue.

(5) The § 1981 claims are time-barred

Under 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981 (1990) (amended 1991).  In 1981, the Supreme Court concluded that § 1981 "cover[ed] only conduct at the initial formation of the contract and conduct which impairs the right to enforce contact obligations through legal process."  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989) (articulating the pre-1991 standard under § 1981).  A promotion claim was actionable under § 1981 only where a promotion rose "to the level of an opportunity for a new and distinct relation between the employee and the employer . . . ."  *See Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377 (articulating the pre-1991 standard for an failure-to-promote claim to be cognizable under §1981), *superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383, 124 S.Ct. 1836, 1846, 158 L.Ed.2d 546 (2004).   In 1991, Congress amended § 1981 to provide for "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b).

10

Section 1981 does not contain an express statute of limitations.  *See* 42 U.S.C. § 1981.  Prior to 1990, federal courts applied the most analogous state statute of limitations.  *Goodman v. Lukens Steel Co.*, 482 U.S.C. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987) (partially superseded by the enactment of 42 U.S.C. § 1658); *see also Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219 (11th Cir. 2001) (applying Alabama's two-year statute of limitations to a § 1981 claim).  Under 28 U.S.C. § 1658, a four-year statute of limitations is provided for claims arising under an act of Congress enacted after December 1, 1990, that did not include a statute of limitations.  28 U.S.C. § 1658; *see Jones*, 541 U.S. at 371, 124 S.Ct. at 1839.  For causes of action existing before the 1990 enactment, the practice of borrowing the state statute of limitations applies.  *See* 28 U.S.C. § 1658; *Jones*, 541 U.S. at 371, 124 S.Ct. at 1839.  If the plaintiff's claim against the defendant was made possible by a post-1990 enactment, the cause of action is governed by § 1658's four-year statute of limitations.  *Jones*, 541 U.S. at 382, 124 S.Ct. at 1845.

Edwards's § 1981 claims are governed by a two-year statute of limitations. She filed her claims outside of that time period.  *Moore*, 267 F.3d at 1219. Therefore, the district court did not err in concluding that Edwards's § 1981 claims were time-barred.  Accordingly, we affirm with respect to this issue.

(6) FMLA claim

11

Under the FMLA, "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period" for any one of several reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To be "eligible," an employee must have worked for the employer for at least 12 months and 1,250 hours during the previous 12-month period. *Id.* § 2611(2)(A). The FMLA "creates a private right of action to seek equitable relief and money damages against employers who 'interfere with, restrain, or deny the exercise of or the attempt to exercise' FMLA rights." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting 29 U.S.C. § 2615(a)(1)). There are two types of claims under the FMLA: interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the Act, and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the Act. *Id.*

To establish an interference claim, an employee need only demonstrate by a preponderance of the evidence that she was entitled to the benefit denied. *Id.* "[T]he FMLA scheme intends that a determination as to FMLA eligibility be made as of the date the FMLS leave is to start." *See Pereda v. Brookdale Senior Living Comm., Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012). "[B]ecause the FMLA

requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event." *Id.* at 1275. In *Pereda*, we concluded that, because the statute contemplates notice of leave in advance of becoming eligible, the FMLA regulatory scheme must necessarily protect pre-eligible employees . . . who put their employers on notice of a post-eligibility leave request." "[A] pre-eligible employee has a cause of action if an employer terminates her in order to avoid having to accommodate that employee with rightful FMLA rights once that employee become eligible." *Id.* To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Id.* at 1297.

Edwards failed to show that she worked the number of hours required to be entitled for FMLA leave. Furthermore, she failed to show that NVI reduced her hours in order to avoid having to accommodate her with rightful FMLA rights by keeping her from becoming eligible for these rights. *See Perada*, 666 F.3d at 1275; *Hurlbert*, 439 F.3d at 1293. Her retaliation claim failed because she could not show a causal connection between the reduction of her hours and her protected activity. Based on these considerations, the district court did not err in granting

summary judgment to NVI on Edwards's FMLA claim.  Accordingly, we affirm with respect to this issue.

(7) Retaliation

Under 42 U.S.C. § 2000e-3(a), an employer may not discriminate against any employee because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge or participated in any manner in an investigation, proceeding, or hearing under this subchapter.  42 U.S.C. § 2000e-3(a).

When considering a motion for summary judgment based on retaliation that involves circumstantial evidence, we analyze the case using the shifting framework set out in *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S.Ct. 1817; *see Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999) (holding that the *McDonnell Douglas* analytic framework applies to retaliation claims).  A plaintiff may establish a claim of retaliation under Title VII by proving that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.  *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

In a retaliation case, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). The acts must be significant rather than trivial. *Id.*, 126 S.Ct. at 2415. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work." *Id.*, 126 S.Ct. at 2415. In *Crawford*, we concluded that an employee, who received an unfavorable performance review that deprived her of receiving a merit pay increase, suffered an adverse action. 529 F.3d at 974.

A plaintiff may satisfy the causation element by showing that the protected activity and the adverse action were not "completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). This element is satisfied if the plaintiff shows that the decisionmaker was aware of the protected activity and that there is "a close temporal proximity between this awareness and the adverse . . . action." *Id.* "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citing with approval decisions holding that a three to four month disparity is insufficient to establish a causal connection). "[I]n the absence of any other evidence of

15

causation," a three-month proximity "between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *see also Higdon*, 393 F.3d at 1220-21 (holding that, by itself, three months was insufficient to prove causation, but noting a previous holding that one month is "not too protracted").

Edwards engaged in protected activity when she complained to Human Resources and when she filed her EEOC charge. The following actions Edwards cited were not materially adverse: (1) Moore assigning her cleaning duties; (2) Moore assigning her more patients than other employees; (3) Moore telling other employees not to talk to her; (4) denial of her request for leave; (5) Moore and the District Manager writing her up; and (2) Moore placing her on the first Performance Improvement Plan. Edwards did not present evidence that she was materially and adversely affected; for example, she did not indicate that she suffered a decrease in salary. *See Crawford*, 529 F.3d at 974; *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. at 2415.

Although the district court concluded that none of the actions cited by Edwards were materially adverse, the following actions may be materially adverse because of the effect on her job, including that: (1) the District Manager and Moore gave her lower scores on her Performance Appraisal, which resulted in a smaller raise; (2) Moore placed her on a second Performance Improvement Plan, which

16

resulted in the suspension of incentives; (3) her hours were reduced, which resulted in less pay; and (4) she was asked not to return to work until further notice, which affected her ability to earn a living.  *See Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. at 2415; *Crawford*, 529 F.3d at 974.  However, each of these actions occurred several months after Edwards's protected activity; hence, she could not rely on temporal proximity to show a causal connection.  Because she presented no other evidence to show a causal connection between her protected activity and the actions, she failed to establish a *prima facie* case of retaliation.  Accordingly, the district court did not err in granting summary judgment on her retaliation claim.  *Wright*, 320 F.3d at 1203 n.3; *see also Cuddeback v. Florida Bd. Of Educ.*, 381 F.3d at 1235-36 (holding that we may affirm a district court's grant of summary judgment based on a failure to establish pretext even where the district court only addressed the issue of establishment of a *prima facie* case).

(8) Racial Harassment

Although Title VII does not expressly mention racial harassment, the statutory phrases, "terms, conditions, or privileges" and "unlawful employment practices" have been interpreted to include discriminatorily hostile or abusive environment claims.  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir. 1999) (*en banc*); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16, 122 S.Ct. 2061, 2073-74, 153 L.Ed.2d 106 (2002).  In order to establish a

hostile-work-environment claim, a plaintiff may show that (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, such as race, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment, and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

There was no admissible evidence to support Edwards's assertion that she was harassed based on her race; thus, the district court did not err in granting summary judgment to NVI on Edwards's racial harassment claim. *Miller*, 277 F.3d at 1275. Accordingly, we affirm with respect to this issue.

(9) State Law Claims

Negligent Hiring, Retention, Training, and Supervision

"[I]mplicit in the tort of negligent hiring, retention, training and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing or tort that caused the plaintiff's injury." *Jones Exp., Inc. v. Jackson*, 86 So.3d 298, 305 (Ala. 2010); *see also Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 825 (Ala. 1999) (declining to recognize a cause of action based on an employer's negligence or

18

wantonness in investigating a claim, independent of proof of wrongful conduct of an employee). Edwards failed to that an employee committed a wrongdoing or tort that caused her injury. Therefore, the district court did not err in granting summary judgment to NVI on Edwards's claim of negligent hiring, retention, training and supervision. Accordingly, we affirm with respect to this issue.

Invasion of Privacy

Alabama state law recognizes the tort of invasion of privacy. *Ex parte Birmingham New, Inc.*, 778 So.2d 814, 818 (Ala. 2000). Invasion of privacy includes giving publicity to private information about the plaintiff that violates ordinary decency. *Id.* A person is subject to liability for giving publicity to a matter concerning the private life of another, if the matter publicized "would be highly offensive to a reasonable person" and "is not of legitimate concern to the public." *Id.* Invasion of privacy also includes putting the plaintiff in a false, but not necessarily defamatory, position in the public eye. *Id.* For a false light claim, "the false light in which the other was placed [must] be highly offensive to a reasonable person," and "the actor [must have] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter." *Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003) (false light). For both types of claims, publicity is defined as "making a matter . . . public, by communicating it to the public at large or to so many persons that the matter must be substantially certain to become

19

one of public knowledge.  *Ex parte Birmingham New, Inc.*, 778 So.2d at 818 (publicity to private information); *see Butler*, 871 So.2d at 12-13 (false light).

None of the actions Edwards cited, including: (1) the recording of information in her personnel file; (2) NVI's contesting of her petition for unemployment benefits; (3) a comment made by a store employee to the District Manager; and (4) other employees being told not to talk to her constitute an invasion of privacy.  Therefore, the district court did not err in granting summary judgment to NVI on Edwards's invasion of privacy claim.  Accordingly, we affirm with respect to this issue.

### III.

Edwards brief has raised points that we have not addressed in this opinion. We have not addressed them because the district court's dispositive order correctly dealt them.  The district court's judgment is

AFFIRMED.