· **Robert M. LAWRENCE, Plaintiff,**

v.

**BAYVIEW LOAN SERVICING, LLC, Defendant.**

### Case No. 14–22991–CIV

United States District Court, S.D. Florida.

Signed January 20, 2016

Aaron David Silvers, Yechezkel Rodal, Loan Lawyers, LLC, Plantation, FL, for Plaintiff.

Brendan I. Herbert, William Power McCaughan, Jr., Akerman Senterfitt, Miami, FL, for Defendant.

### *ORDER*

KATHLEEN M. WILLIAMS,
UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court on Defendant Bayview Loan Servicing, LLC's ("Bayview") motion for summary judgment (DE 65), to which Plaintiff filed a response in opposition (DE 73), and Defendant filed a reply (DE 78). Also before the Court is Plaintiff's motion for partial summary judgment (DE 67), to which Defendant filed a response in opposition (DE 75), and Plaintiff filed a reply.

## I. BACKGROUND

In May of 2007, Plaintiff Robert M. Lawrence obtained a mortgage from American Brokers Conduit for $1,000,000,

which was secured by a properly located at 891 South Dyer Circle, Incline Village, Nevada. (DE 64–1 1). Saxon Mortgage Services, Inc. ("Saxon"), was initially responsible for the management and administration of Mr. Lawrence's mortgage. (DE 64–1 ¶ 2). While the loan was being managed by Saxon, Mr. Lawrence requested and received a loan modification. (DE 64–1 ¶¶ 3–5). As part of the modification process, Mr. Lawrence submitted a financial statement to Saxon which included his cellular telephone number. In addition, Mr. Lawrence included his cellular telephone number in a November 1, 2009 letter to Saxon. (DE 64–1 ¶ 5). Mr. Lawrence has only ever had one cellular telephone number and that cellular telephone is the only telephone Mr. Lawrence has. (DE 64–1 ¶¶ 10–11).

On April 3, 2011, Defendant Bayview assumed the management and administration of Mr. Lawrence's mortgage. (DE 64–1 ¶ 6). As part of the transfer of servicing rights from Saxon to Bayview, Saxon sent Bayview their file on Mr. Lawrence's mortgage. (DE 64–1 ¶¶ 6–8). Included in those documents were the financial statement and the November 1, 2009 letter containing Mr. Lawrence's cellular telephone number. (DE 64–1 ¶¶ 6–8). Bayview reviewed the Lawrence file for accuracy and uploaded the file into Bayview's record keeping system. (DE 64–1 ¶ 8).[1]

One of the ways that Bayview contacts its clients is through the use of an automatic telephone dialing system ("ATDS").

(DE 64–1 ¶ 12). Every call placed by Bayview through an ATDS is related to the management or administration of loans. (DE 64–1 ¶ 13). Every call placed by Bayview to Mr. Lawrence's phone using an ATDS was made for the purposes of managing and administering Mr. Lawrence's mortgage. (DE 64–1 ¶ 14). In total, Bayview placed at least 200 telephone calls to Mr. Lawrence's cellular telephone number using an ATDS. (DE 66 ¶ 3).

For his part, Mr. Lawrence sent Bayview at least 32 separate letters containing his cellular telephone number, including letters sent on: March 25, 2012; May 25, 2012; June 30, 2012; November 8, 2012; April 1, 2013; October 1, 2013; October 26, 2013; November 1, 2013; January 3, 2014; January 5, 2014; January 13, 2014; January 14, 2014; January 24, 2014; January 27, 2014; February 4, 2014; February 26, 2014; March 10, 2014; April 4, 2014; April 28, 2014; August 29, 2014; October 1, 2014; November 1, 2014; December 1, 2014; January 1, 2015; February 1, 2015; February 27, 2015; April 1, 2015; May 1, 2015; June 1, 2015; July 1, 2015; August 1, 2015; September 1, 2015. (DE 64–1 ¶¶ 22–53).[2] On three occasions—October 5, 2011, June 4, 2012 and July 7, 2012—Mr. Lawrence verbally requested that Bayview not call him.[3] (DE 64–1 ¶ 16). After Mr. Lawrence verbally requested Bayview not to call him, a "standout message" was placed on Mr. Lawrence's account, indicating that he did not wish to receive calls. (DE 66 7–20).

---

1. In response to Defendant's statement of facts 6–8, Plaintiff has asserted that he "is without information to either dispute or confirm the facts set forth" in those paragraphs. *See* DE 74. Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the Court deems these facts undisputed for purposes of the motion.

2. Mr. Lawrence also sent letters on April 30, 2013, September 1, 2013, December 24, 2013, May 25, 2014, and July 18, 2014. Those letters did not include his cellular telephone number. (DE 64–1 ¶¶ 58–62).

3. For the purposes of this motion, the Court assumes that Mr. Lawrence's verbal requests not to be called constitute effective verbal revocation of consent under the TCPA.

None of the 32 letters to Bayview con-, tained any explicit written limitation on how Bayview could use Mr. Lawrence's cellular telephone number nor did Mr. Lawrence ever send a written request asking Bayview to stop calling him. (DE 64–1 ¶¶ 18, 21). Rather, Mr. Lawrence's inclusion of his cellular telephone number in his letters to Bayview was "his providing of his consent for Bayview to contact him on that cellular telephone line in order to resolve the issues raised in the letter." (DE 64–1 ¶ 54). It should also be noted that none of Mr. Lawrence's letters were addressed to a specific person or department at Bayview. (DE 64–1 ¶ 20). Since Bayview began managing Mr. Lawrence's mortgage in April of 2011, Mr. Lawrence has called Bayview from his cellular phone approximately 50 times. (DE 64–1 ¶ 63).

Mr. Lawrence filed the instant suit on August 14, 2014 and filed an amended complaint on August 31, 2015. (DE 42). As outlined above, Mr. Lawrence continued to send Defendant letters containing his cellular telephone number after initiating this action. Plaintiff's amended complaint asserts a single count alleging that Defendant placed calls to Plaintiff using an automatic telephone dialing system without Plaintiff's prior express consent in violation of the Telephone Consumer Protection Act ("TCPA"). Bayview has moved for summary judgment on the grounds that Bayview cannot be subject to liability for the vast majority of the calls because Mr. Lawrence, through his inclusion of the cellular telephone number on the Saxon loan modification and his 32 letters, provided express consent to receive telephone calls from Bayview. Bayview does not seek summary judgment for those calls occurring between Mr. Lawrence's verbal revocation of consent and the sending of his next letter (i.e., calls occurring between (1) October 5, 2011 and March 25, 2012; (2) June 4, 2012 and June 30, 2012; and (3) July 7, 2012 and November 8, 2012).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir.2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the movant establishes the absence of a genuine issue of material fact, the non-movant party must produce admissible evidence and "go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Edwards v. Nat'l Vision Inc.*, 568 Fed.Appx. 854, 858 (11th Cir.2014).

Finally, "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (internal quotations omitted) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). Thus, "[i]f the non-movant ... fails to adduce evidence which would be sufficient ... to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir.1997).

## III. ANALYSIS

■ The TCPA makes it unlawful for any person to "make any call (other than a call...made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service..." 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission has promulgated regulations explaining when a call is made with the prior express consent of a party. In *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008) (the "2008 Ruling"), the FCC explained that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." The FCC's conclusion is bolstered by a prior determination that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number

which they have given, absent instructions to the contrary." *See id.* Moreover, the House Report on the TCPA states that the restriction on calls "does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications." *See id.* The FCC's 2008 Ruling is binding on this Court. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir.2014) (finding that "[t]he 2008 FCC Ruling thus has the force of law" and that "the district court was without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling.").

■ The 2008 Ruling's example of the completion of a credit application as an example of providing express consent to be called is illustrative and not exclusive. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir.2014). Courts have also found that a debtor consents to calls about an existing debt when he provides his cellular number in connection with a debt, including in transactions or communications occurring after the initial signing of the loan. See, *e.g., Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552 (6th Cir.2015). Thus, Plaintiff provided Defendants with express consent to be called when he included his cellular telephone number in the Saxon loan modification and in each of his subsequent 32 letters. There is no dispute that Plaintiff knowingly provided his cellular telephone number to Bayview and did so with the expectation that Bayview would use that number to contact him about his debt. (See DE 64–1 54–55; Deposition of Robert Lawrence, 116:21–24, 188:12–189:9, DE 60–1). Accordingly, the Court finds that each letter constitutes express consent to be called, as does the Saxon loan modification. *See Mais*, 768 F.3d 1110; *Hill*, 799 F.3d at 551 ("Unsurprisingly, then, a person gives his 'prior express consent' under the statute if he gives a company his number before it calls him.").

The TCPA does not contain any language expressly granting consumers the right to revoke their prior express consent. However, the FCC has stated that autodialed calls are lawful so long as the recipient has granted "permission to be called at the number which they have given, *absent instructions to the contrary.*" *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) (emphasis added). In addition, the FCC has indicated that "a called party may revoke consent at any time and through any reasonable means." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am. Ass'n of Healthcare Admin. Mgmt. Am. Bankers Ass'n Coal. of Mobile Engagement Providers Consumer Bankers Ass'n Direct Mktg. Ass'n Paul D.S. Edwards Milton H. Fried, Jr., & Richard Evans Glide Talk, Ltd. Glob. TePlink Corp. Nat'l Ass'n of Attorneys Gen. Prof'l Ass'n for,* 30 F.C.C. Rcd. 7961 (2015).

Plaintiff asserts that Defendant should be liable for each and every call placed to Plaintiff, including those calls placed after Plaintiff sent Bayview a letter containing his cellular telephone number. Plaintiff's argument hinges on his contention that his three oral revocations of consent constitute "instructions to the contrary" which apply in perpetuity unless, and until, he explicitly informs Defendants that they may call him

again. And, according to Plaintiff, the letters he sent Defendant, which were "his way of providing consent for Bayview to contact him on that cellular telephone line in order to resolve the issues raised in the letter" (DE 64–1) do not qualify as explicit consent to be called in the face of his oral revocations. Plaintiff's argument would place Defendant's in a vicious Catch–22, where Plaintiff invites Defendant to call him and then seeks to hold Defendant liable when it does so.

■ As discussed above, each time Plaintiff sent a letter to Defendant containing his cellular telephone without placing any limitation on how the number could be used or instructing Defendant not to call him, he was expressly consenting to calls from Defendant. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C. Rcd. 8752 (1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *House Report,* 102–317, 1st Sess., 102nd Cong. (1991), at p. 13 (stating that by providing the caller with their telephone number for use in normal business communications, "the called party has in essence requested contact"). None of those letters contained "instructions to the contrary," placing limits on how Defendant could use his cellular telephone number.[4]

4. Plaintiff asks rhetorically "If a consumer has a legitimate issue to resolve with a business and sincerely wishes to speak with a representative that can help—is there no way that the consumer can provide his or her cellular telephone but also express a desire not to receive phone calls via ATDS?" (DE 79). The answer to Plaintiff's question is: Yes. A consumer can provide his cellular telephone number and express a desire not to receive phone calls via ATDS. All he needs to do is include instructions on how his number is to be used when providing his number to the business—something Plaintiff here did not

do. *See Johnson v. Credit Prot. Ass'n, L.P.,* No. 11–80604–CIV, 2012 WL 5875605, at *4 (S.D.Fla. Nov. 20, 2012) ("Without an affirmative statement by Plaintiff that he advised [Defendant] it could only use his phone number for [certain] purposes, he is not entitled to claim he gave instructions to the contrary."); *Roberts v. Paypal, Inc.,* 621 Fed.Appx. 478, 479 (9th Cir.2015) ("Even if [Plaintiff] believed that [Defendant] would only contact him on his cell phone about problems with his online transactions, that limitation did not apply to [Defendant's] use of his number be-

Consequently, the Court concludes, as a matter of law, that each letter constitutes express consent to be called. While Mr. Lawrence was free to revoke his consent at any time, the Defendant was entitled to place calls to him following each letter unless, and until, Mr. Lawrence once again revoked his consent.

## IV. CONCLUSION

Just as Plaintiff could revoke his consent to be called, so too could he renew his consent to be called. For the reasons set forth above, the Court finds that Defendant is entitled to summary judgment for on all calls occurring before October 5, 2011, all calls occurring between March 25, 2012 and June 4, 2012, all calls occurring between June 30, 2012 and July 7, 2012, and all calls occurring after November 8, 2012. Therefore it is hereby **ORDERED AND ADJUDGED** that Defendant's motion for summary judgment (DE 65) is **GRANTED** and Plaintiff's motion for summary judgment (DE 67) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this *20th* day of January, 2016.

cause he failed to communicate it to [Defendant].'').