[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11632
Non-Argument Calendar

_____

D.C. Docket No. 2:15-cv-01006-MHH


ROBERT COLLIER, JR.,

Plaintiff - Appellant,

versus

HARLAND CLARKE CORP.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 8, 2020)

Before GRANT, LUCK, and FAY, Circuit Judges.

PER CURIAM:

After many years as an employee at Harland Clarke Corp., Robert Collier

was informed that the company would be undergoing a reduction in workforce.  He

was the only employee affected.  Collier filed suit against Harland Clarke, bringing claims of discrimination under the Americans with Disabilities Act and the Age Discrimination in Employment Act.[1]  *See* 42 U.S.C. § 12112(a) (ADA); 29 U.S.C. § 623 (ADEA).  He also brought state law privacy claims, arguing that during the period of his dismissal Harland Clarke inappropriately communicated with a disability benefits administrator regarding his health status and falsely told customer contacts that he had "retired."

The district court granted the defendants summary judgment on all counts, and Collier appealed.  Collier argues that the district court erred because the evidence showed that (1) Harland Clarke's proffered reasons for eliminating his position and terminating him—that his position was no longer needed due to declining sales and the company's new focus on different products—were pretexts for disability discrimination; (2) there was a "convincing mosaic" of circumstantial evidence of age discrimination; (3) under an "intersectional discrimination" theory, Harland Clarke discriminated against him based on a combination of his disability and age; (4) Harland Clarke retaliated against him for filing a charge of disability and age discrimination with the Equal Employment Opportunity Commission; and

---

[1] The district court also granted summary judgment against Collier's claim under the Alabama Age Discrimination in Employment Act.  Ala. Code § 25-1-20.  On appeal, however, Collier does not challenge the court's ruling on that claim.

2

(5) Harland Clarke placed him in a false light and publicly disclosed his private information.  After careful review, we affirm the district court.

## I.

Harland Clarke provides services and products to financial institutions. Though Collier had left to work for a competitor after a previous stint with the company, Collier returned to Harland Clarke in 2004 in a position that both parties agree was functionally equivalent to "Forms Director."  Within Harland Clarke, "forms" referred to checks, ledgers, bank receipts, and other paper products. Collier managed employees below him in the division but did not directly handle any customer accounts.

This case arises from Harland Clarke's decision in 2014 to engage in a reduction in force of precisely one employee position—Collier's.  At the time leading up to his termination, Collier was 61 years old.  Steve Moyer, Senior Vice President of the Community Markets Division, made the decision to eliminate Collier's position.  Moyer tied this reduction to Harland Clarke's need to focus on commercial print such as posters and banners.  This change in focus mirrored his belief that changes in bank practices were reducing the need for paper products. In a worksheet analysis prepared with Sonia Ellison (an HR representative) addressing the reduction in force, Moyer stated that Collier's "skill and expertise is in the area of Forms and not Commercial Print"; that Collier was "the only person

in the Director Sales II and Director II-MICR position"; and that Collier did "not have direct business relationships with large community bank accounts/clients." While Moyer tied the reduction to a "decline in Forms' revenue," evidence in the record suggests that the financial situation in the Forms division was not as dire as Moyer suggests—at least based on the information available to Moyer at the time he made the decision to terminate.

Collier connects Moyer's decision to terminate with health conditions that he was dealing with at the time. For example, after undergoing back surgery, Collier attended a division meeting while using a wooden cane. Collier took three months of disability leave in relation to that surgery. Collier also reports that he heard various comments from other employees of the company about his health. Of most relevance, Moyer (the decisionmaker) asked him from time to time how he was doing with recovery. Collier testified that other employees commented on his lack of mobility and stressed that he looked like he was struggling to get around. One of these other employees reportedly said that Harland Clarke needed to "get rid of" Collier—though Collier did not hear this comment directly, and his source of information likewise had not heard the comment firsthand.

On January 9, 2015, Moyer and Ellison told Collier that his position was being eliminated. Collier asked Moyer if he could "drop into a sales position and keep selling forms and commercial print." Moyer told Collier that "there wasn't a

4

position available," while Ellison told Collier he would be considered for any position for which he applied. Neither Moyer nor Ellison informed Collier that a director position in the Key Markets Group was available. The person eventually hired to fill that vacant position was only two years younger than Collier.

Collier reached out to Harland Clarke's disability benefits administrator seeking short-term disability benefits. Ellison initially told Collier that he was ineligible, but later learned she was incorrect and informed Collier that he was eligible. Ellison also sent Collier a Benefits Summary Sheet stating that Collier would receive twenty-six weeks of severance pay, payment for any accrued and unused 2015 PTO hours, and unemployment compensation, regardless of whether he signed Harland Clarke's standard separation agreement. The summary indicated, however, that the separation document was the governing instrument, and that Collier should review it for specific information.

As it turns out, when compared to the actual terms of Collier's separation benefits, the summary was flatly wrong. The twenty-six weeks of severance pay were in fact conditioned on signing the separation agreement. And this put Collier—who had by this point filed an EEOC charge alleging discrimination under the ADA and ADEA—in a tricky spot, because the summary agreement asked Collier to release those claims. Collier did not sign the agreement.

5

Collier included allegations regarding his access to disability benefits in his EEOC charge. Ellison began directly contacting the disability benefits administrator, asking for an expedited decision, explaining that there was an EEOC charge pending, and questioning why the administrator needed more information given that Collier's doctor had indicated that he could not work. The administrator eventually denied the claim, finding that the evidence did not support an award of disability benefits. Harland Clarke did not override the recommendation.

Harland Clarke never filled Collier's former position. It instead divided his duties among the directors of the Key Markets Group. Collier never reapplied for any position at Harland Clarke. Harland Clarke informed some customer contacts that Collier had retired. Collier says that he never retired—and that Harland Clarke prevented him from getting access to job leads by suggesting that he had.

Collier filed suit in district court. His suit included the discrimination claims that were the subject of his EEOC charge and a retaliation claim. He also argued that Harland Clarke's discussion with the disability benefits administrator regarding his health and the company's disclosure to customer contacts that he "retired" constituted intrusion upon seclusion and false light invasion of privacy. The district court granted summary judgment to Harland Clarke on all counts, and Collier appealed.

II.

"We review the district court's grant of summary judgment *de novo.*" *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 795 (11th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "a 'mere scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). We generally will not consider an argument not raised in the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

II.

A.

We first address Collier's disability claim under the ADA. The ADA prohibits covered private employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). The *McDonnell Douglas* burden-shifting framework is applicable to ADA claims relating to discriminatory discharge. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (explaining that the "burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims"); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792

7

(1973).  Under that framework, if the plaintiff establishes a prima facie case of discriminatory discharge, and the employer proffers a legitimate, nondiscriminatory reason for its decision, then the plaintiff must show that the reason was a pretext for discrimination.  *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359–61 (11th Cir. 1999).  To establish a prima facie employment-discrimination case under the ADA, the employee must show that, at the time of the adverse employment action, (1) he was regarded as having a disability; (2) he was a qualified individual for the position in question; and (3) the employer discriminated against him because of his disability.  *See EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016).  The third prong, addressing causation, requires the plaintiff to show that the discriminatory motivation was the but-for cause of the adverse employment action.  *Holly*, 492 F.3d at 1263 n.17.  We have held that, when making this inquiry, remarks by non-decisionmakers and remarks unrelated to the decisionmaking process are of little probative value in showing discriminatory intent.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that a manager's comment that "older people have more go wrong" did not show age based discriminatory intent against the employee because the comment was too vague and the manager was not involved in the termination decision).

8

The district court did not err in granting summary judgment against Collier on his ADA claim because he failed to show that he was terminated because of a perceived disability involving his limited mobility. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017). In particular, the record does not contain a genuine dispute of material fact as whether his disability was a but-for cause of his termination. The only comments attributed to Moyer—the decisionmaker—were general questions asking how Collier was doing following his surgery. While they establish that Moyer was aware that Collier had undergone surgery, they contain nothing to suggest that Moyer acted because Collier was disabled. They do not establish any animus on Moyer's part toward Collier due to his disability, nor do they otherwise indicate that Moyer was motivated to act because of Collier's use of a cane. The comments that Collier alleges were made by other members of the company inquiring about his health are of extremely limited probative value because they came from employees who were not connected to the decision to remove Collier's position. *See A.B.E.L. Servs., Inc.*, 161 F.3d at 1330.

Collier's attempt to bolster his claim by characterizing testimony in the record as establishing a contradictory basis for his termination is unavailing. For example, while the company offered two reasons why his initial termination date was delayed, those reasons—that the winter holidays were around the corner and that another director had unexpectedly just been terminated—are complementary,

not contradictory.  The fact that both reasons may have played a role in delaying Collier's termination does not create a genuine issue of triable fact as to the initial decision to eliminate his position.  And as the district court recognized, the same is true of the fact discrepancies regarding the timeline for posting a new director position in the Key Markets Group—any issue of fact is insufficient to establish a *genuine* issue of fact concerning Harland Clarke's discriminatory intent (or lack thereof).

Any inference drawn from the sum of this information to conclude that Collier's disability was a but-for cause of his termination would be unreasonable. *See Ave. CLO Fund, Ltd., et al. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) ("[A]n inference based on speculation and conjecture is not reasonable." (quotation marks omitted)).  Because Collier did not establish a prima facie case of disability discrimination, we affirm the district court's grant of summary judgment on this claim.

B.

We next address Collier's age discrimination claim under the ADEA.  The ADEA makes it unlawful for an employer to discharge an employee because of his age.  29 U.S.C. § 623(a)(1).  An ADEA claim based on circumstantial evidence is also analyzed using the *McDonnell Douglas* burden shifting framework.  *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).  Under that

10

framework, if the plaintiff establishes a prima facie case of discriminatory discharge, and the employer proffers a legitimate, nondiscriminatory reason for its decision, then the plaintiff must show that the reason was a pretext for discrimination. *Id.*

To establish pretext, the employee must produce evidence sufficient to permit a reasonable factfinder to conclude that the employer's reasons were not the real reasons for the adverse employment action. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016). A plaintiff cannot show pretext by recasting "an employer's proffered nondiscriminatory reasons" or substituting "his business judgment" for that of the employer's. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). The employee must meet each of the employer's proffered reasons "head on" and "cannot succeed by simply quarreling with the wisdom of [a] reason." *Furcron*, 843 F.3d at 1313–14 (quoting *Chapman*, 229 F.3d at 1030).

Ultimately, an employee who brings an ADEA action "must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman*, 808 F.3d at 1298. The framework of *McDonnell Douglas*, however, is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, a triable issue of fact may exist if the record, viewed in a light

11

most favorable to the plaintiff, presents a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation omitted).

The district court did not err in granting summary judgment against Collier on his age discrimination claims under the ADEA because, even if we assume that he made out a prima facie case, he failed to show that the appellee's proffered legitimate, nondiscriminatory reasons for terminating him were pretexts for age discrimination. "We are not in the business of adjudging whether employment decisions are prudent or fair." *Damon*, 196 F.3d at 1361. Instead, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted). For his ADEA claim to survive, Collier needed to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

Collier has failed to do so. The record is devoid of evidence to suggest that Collier's age was a motivating factor in Moyer's decision to terminate him. We note that the ADEA "does not mandate that employers establish an interdepartmental transfer program during the course of" a reduction in force, so

12

that Harland Clarke may not be held liable for failing to facilitate a new position for Collier. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344–45 (11th Cir. 2003) (citation omitted). And the record supports Harland Clarke's non-discriminatory explanation that the company was going to focus on commercial print rather than forms, an area where Collier had limited expertise (at best). While Collier questions the company's prognostications regarding the financial outlook of the Forms division, we do not "second-guess the business judgment of employers." *Combs*, 106 F.3d at 1543.[2]

Collier's argument under the "convincing mosaic" standard fares no better. Whether analyzed under the *McDonnell Douglas* framework or as a mosaic, the evidence regarding the decision to terminate him is simply insufficient for a reasonable factfinder to conclude that the explanation given by the company is false and that intentional discrimination due to Collier's age was the actual reason for his termination.[3] We therefore affirm the district court's grant of summary judgment on this claim.

---

[2] Collier himself "does not dispute that the sale of printed forms was facing a market challenge, as more and more institutions move from printed records to electronic records."

[3] We likewise briefly resolve Collier's own brief argument in favor of an "intersectional claim" by holding that, even assuming such a theory was properly raised, Collier has failed to provide sufficient evidence regarding either his age or his disability for a reasonable factfinder to conclude that Collier was fired due a combination of the two. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (explaining that a mere "scintilla" of evidence is insufficient to raise a genuine issue of material fact).

C.

The ADA mandates that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). Similarly, the ADEA prohibits retaliation against employees who "opposed any practice" made unlawful by the ADEA. 29 U.S.C. § 623(d). For a private employee such as Collier, the requirements for establishing a prima facie case of retaliation under the ADA and ADEA are the same. *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1193–94 (11th Cir. 2016), *abrogated on other grounds by Babb v. Wilkie*, 140 S. Ct. 1168, 1176 (2020), (ADEA); *Stewart v. Happy Herman's Cheshire Bridge Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (ADA); *see also Babb*, 140 S. Ct. at 1176 (explaining that a different standard applies to federal employees under the ADEA). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an "adverse employment action"; and (3) there was a causal link between the adverse action and his protected expression. *Stewart*, 117 F.3d at 1287.

But for the district court to properly consider such a claim, Collier needed to plead it in his complaint. A "plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) (citation omitted). As the district court correctly

14

found, Collier's complaint did not reference an entitlement to either a severance package or to short-term disability benefits when making his retaliation claim. Instead, the complaint's paragraph on this point only noted that he "was terminated and has been refused transfer, rehire, interview, and all consideration for open and available jobs." The theory that Collier's benefits package changed as a result of his EEOC charge only emerged in a brief opposing summary judgment. Because the district court did not err in ruling against Collier for failing to properly amend his complaint and instead making an argument in an opposition brief, we may affirm.

## D.

We finally address Collier's state law privacy claims. Under Alabama law, an invasion of privacy claim can consist of (1) an intrusion upon the plaintiff's physical solitude or seclusion, (2) "giving publicity to" private information "that violates the ordinary decencies," (3) placing the plaintiff in a false position in the public eye, or (4) the appropriation of "some element of the plaintiff's personality for a commercial use." *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (citation omitted). To establish an invasion of privacy claim, a plaintiff must show that the intrusion was "in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id.* (quotation marks omitted).

15

The Alabama Supreme Court has held that a false light claim occurs when "one gives publicity to a matter concerning another that places the other before the public in a false light," the "false light in which the other was placed would be highly offensive to a reasonable person," and "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Ex parte Bole*, 103 So. 3d 40, 51–52 (Ala. 2012). A matter is given publicity when the information is made available "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Ex parte Birmingham News*, 778 So. 2d 814, 818 (Ala. 2000). Two factors are considered in determining whether an intrusion upon one's seclusion is wrongful: (1) "the means used," and (2) "the defendant's purpose for obtaining the information." *Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988).

Here, the district court did not err in granting summary judgment against Collier on his state law invasion of privacy claims. In particular, we agree with the district court that Harland Clarke's inquiries to the benefits administrator regarding Harland's health were not "prying or intrusion" which "would be offensive or objectionable to a reasonable person," but instead reasonable attempts to resolve his short-term disability requests. *Id.*

16

We likewise conclude that Collier has failed to make out a false light claim. Collier might rightfully be upset if Harland Clarke informed customer contacts that he had retired when he in fact wanted to obtain other employment. But he has not shown that any statements regarding his "retirement" were made to the public at large—nor can he show that those statements would be highly offensive to a reasonable person. *See Ex parte Birmingham News*, 778 So. 2d at 818. Accordingly, we affirm the court's grant of summary judgment to Harland Clarke on these claims.

## III.

The circumstances of Collier's termination provoke a great deal of sympathy. Nevertheless, we cannot conclude that the district court erred in finding that there was no genuine issue of material fact with regard to any of the claims presented in his case. Accordingly, the district court is **AFFIRMED.**